**IN THE UNITED STATES BANKRUPTCY COURT FOR**

**THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE:<br><br>**VENT ALARM CORPORATION**<br><br>Debtor | **CASE NO. 15-09316-MCF11**<br><br>**CHAPTER 11** |

**Opinion and Order**

Before the Court is Bird Group, LLC ("Bird") and Putnam LAC Holding, LLC's ("Putnam") Motion for Stay Pending Appeal pursuant to Fed. R. Bankr. P. 8007 (Docket No. 186). For the reasons stated herein, the Motion for Stay Pending Appeal is DENIED.

Vent Alarm Corporation ("Debtor") is a subcontractor in the Ciudadela Project, a mixed-use residential, retail, office and parking real estate project with several buildings. As a subcontractor, Debtor is to provide the windows for Phase III of the project. Putnam is the owner of the project and Bird, the contractor.

On February 10, 2016, Bird and Putnam moved the Court to compel Debtor's assumption or rejection of the Bird subcontract. That same day, the Court ordered Debtor to respond to Bird and Putnam's motion and move for assumption or rejection on an expedited basis, as requested by the opposing parties. Debtor moved to assume the contract on February 24, 2016. Bird and Putnam

1

opposed Debtor's assumption of the contract because, in essence, Debtor is allegedly delayed with the construction schedule and will not be able to finance the project.

After Debtor's bankruptcy filing, Bird and Putnam engaged Debtor in negotiations to terminate the subcontract; however, no agreement was reached. The Debtor placed a timely purchase order that was later cancelled due to negotiations among the parties. These negotiations delayed the purchase of glass that would have otherwise satisfied the projected deadlines under the subcontract.

On April 6, 2016, after a two day evidentiary hearing, the Court issued its findings of fact and conclusions of law, granting Debtor's motion to assume the contract, pursuant to 11 U.S.C. § 365.[1] On April 14, 2016, Bird and Putnam requested a stay of the effectiveness of the April 6, 2016 order pending a resolution of their appeal to the Bankruptcy Appellate Panel for the First Circuit, pursuant to Fed. R. Bankr. P. 8007.

In deciding whether to grant a motion requesting a stay pending appeal, the Court must apply the standard for preliminary injunctive relief. Courts have substantial discretion under Fed. R. Bankr. P. 8007 to grant or deny a stay pending appeal on such terms as it may deem appropriate, subject to an abuse of discretion standard of review. In re Target Graphics, Inc., 372 B.R. 866 (E.D.Tenn. 2007). "In the typical case, a party seeking preliminary injunctive relief must prove: (1) a substantial likelihood of success on the merits; (2) a significant risk of irreparable harm if the injunction is withheld; (3) a favorable balance of hardships; (4) a fit (or at least, a lack of friction) between the injunction and the public interest." Ralph v. Lucent Technologies, Inc., 135 F.3d 166, 167 (1st Cir. 1998). In the First Circuit, likelihood of success on the merits is the main consideration

---

[1] Unless otherwise indicated, all statutory references are to title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 (the "Bankruptcy Code").

of the four-factor framework. Lack of such likelihood bars further inquiry into other requisites for injunctive relief. Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996).

Bird and Putnam are unlikely to succeed on appeal because there are no material defaults on Debtor's part. Any delay in the projected schedules does not constitute an incurable non-monetary default because Debtor may be able to cure the delay in the course of the construction project. Debtor has provided adequate assurance through payment and performance bonds as well as a post-petition financing agreement with United Surety and Indemnity Company ("USIC"). USIC's Vice President, Duhamel Iglesias, testified at the hearing that it would provide Debtor with the monies necessary to finish the project.

Debtor has complied with other initial deadlines under the contract, such as shop drawing approvals and aluminum frame fabrication. However, Debtor's delivery of glass was not possible due to intervening negotiations that prevented Debtor from purchasing and delivering the necessary glass to the project on the agreed upon dates. The Debtor's cancelation of the glass purchase-order was a result of the failed negotiations for the contract's termination that resulted in an initial delay. The testimony heard by the Court clearly reflected that there is still an opportunity in the time schedule to cure this delay before the substantial performance end date of September 20, 2017.

Courts have found that the Debtor' inability to cure nonmonetary defaults pursuant to § 365(b) prevents them from assuming an executory contract only if the defaults are material or if they caused substantial economic detriment. In the instant case, testimony by Bird's president Manuel Deliz, reflects that if Debtor is terminated from the project, it would face even more delay and expense by replacing Debtor with another subcontractor. As such, Debtor's assumption of contract does not prejudice either Bird or Putnam.

3

In <u>Chapin Revenue</u>, the court considered whether a Debtor had committed a historical nonmonetary default pursuant to a software licensing agreement that barred its assumption. The nondebtor claimed that debtor's breach of contract by delivering copies of the software to other parties warranted Debtor's denial of contract assumption. The court did not rule upon a finding of historical defaults because the default was immaterial under the contract's terms. The court's inquiry into the incurability of the historical default was not necessary upon a finding of the immateriality of the default. <u>In re Chapin Revenue Cycle Mgmt., LLC</u>, 343 B.R. 728, 731 (Bankr.M.D.Fla.2006). This analysis has been applied by at least two other courts when addressing the existence of a nonmonetary default and allows a debtor to assume a contract albeit the presence of immaterial defaults at the moment of debtor's assumption of a contract. <u>See</u> <u>In re Clearwater Natural Res., LP,</u> WL 2208463, at *4 (Bankr.E.D.Ky. July 23, 2009) (materiality and economic significance of default is measure of whether debtor may assume a contract in which a non-curable, non-monetary default has occurred); <u>In re Cumberland Corral, LLC,</u> WL 948473, at *10 (Bankr. M.D. Tenn. Mar. 11, 2014). We adhere to the approaches reached in these courts' conclusions in order to maximize the viability of a debtor's ability to assume a contract in bankruptcy and hold that Debtor's delay did not constitute a material contractual default.

Under the applicable standard, Debtor's assumption of executory contracts is "one of the basic reorganizational tools available to debtors under the Bankruptcy Code. The authority to reject an executory contract is vital to the basic purpose of a Chapter 11 reorganization, because it can release the debtor's estate from burdensome obligations that can impede a successful reorganization." <u>In re BankVest Capital Corp., 360 F.3d 291 (1st Cir. 2004)</u>. By permitting debtors to shed disadvantageous contracts but keep beneficial ones, § 365 advances one of the core purposes

4

of the Bankruptcy Code: "to give worthy debtors a fresh start." Id.

A motion to assume should be considered a summary proceeding, intended to efficiently review the trustee's or debtor's decision to adhere to or reject a particular contract in the course of the swift administration of the bankruptcy estate. It is not the time or place for prolonged discovery or a lengthy trial with disputed issues. Under the "business judgment" test, a debtor must simply put forth a showing that assumption or rejection of the executory contract or unexpired lease will benefit the Debtor's estate. In re: Genco Shipping & Trading Ltd., 509 B.R. 455, 463 (Bankr. S.D.N.Y. 2014). Putnam's opposition was unsubstantiated since the delays were immaterial and were to a certain point caused by potential negotiations to end the parties' business relationship. The Debtor's assumption of the Bird contract is practicable. Debtor is within the dates required under the Ciudadela Phase III building development to install glass. The end-date for Debtor to install glass is September 20, 2017. Furthermore, Debtor has the financial backing of USIC to complete the required performance under the contract dates and catching up is practicable under the circumstances. Furthermore, USIC's testimony as the financing party under the assumption contract assured the Court that the monies required to complete the construction project would be provided by USIC and was sufficient to comply with the requisites of § 365(b).

Insomuch as Putnam and Bird have failed to meet the burden of demonstrating likelihood of success on the merits, the Court need not entertain other factors to consider the stay of this Court's order pending their appeal. However, a brief review of the remaining factors reflects that Bird, Putnam and Debtor will be caused harm if the executory contract is stayed because it will delay Debtor and other subcontractor's performance, thus adversely affecting the entire project's schedule

5

and projected substantial completion date. Thus, the Court denies their request for a stay of the order granting the debtor's assumption of the contract.

IT IS SO ORDERED.

In San Juan Puerto Rico, this 18th day of April 2016.

_____

MILDRED CABAN FLORES
U.S. Bankruptcy Judge

6